**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Myles J. CONNOR, Jr., Defendant–Appellant.**

**Nos. 92–1786 and 92–1875.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 21, 1992.

Decided May 6, 1993.

---

Byron G. Cudmore, Asst. U.S. Atty., Office of the U.S. Atty., Springfield, IL (argued), for plaintiff-appellee.

Gregory Collins (argued), Stratton, Dobbs & Nardulli, Springfield, IL, for defendant-appellant.

Before CUMMINGS, Circuit Judge, PELL, Senior Circuit Judge, and KAUFMAN, Senior District Judge.*

FRANK A. KAUFMAN, Senior District Judge.

This is the second appeal to this Court relating solely to sentencing departures above the guidelines by the district court. Specifically, in this appeal, Myles Connor challenges the sentence of 155 months imposed upon him by the court below after remand by this Court following Connor's initial appeal.

On November 22, 1989, Connor pled guilty to one count of possession of cocaine with intent to distribute, one count of conspiracy to distribute over 500 grams of cocaine, two counts of distribution of controlled substances, two counts of interstate transportation of stolen property, and one count of attempted escape. The district court (Mills, J.) sentenced defendant to concurrent terms of imprisonment, with the longest term being 240 months. In so doing, the district court departed upward from offense level 24 (26 minus 2 for acceptance of responsibili-

---

* The Honorable Frank A. Kaufman, Senior District Judge for the District of Maryland, is sitting by designation.

ty)/criminal history category V, resulting in a sentencing guidelines range of 92–115 months,[1] concluding that there were "aggravating circumstances of a kind, and to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines." *United States v. Connor,* 743 F.Supp. 582, 584 (C.D.Ill.1990). Those aggravating circumstances included the district court's determination that "the defendant's criminal history category did not adequately reflect the seriousness of his past criminal conduct or the likelihood that he will commit other crimes." *Id.* Accordingly, "the [District] Court found that an increase in the offense level to 32 and an increase in the criminal history category to VI was appropriate," yielding a Guideline range of 210–262 months. The district court sentenced Connor to 240 months. *Id.* at 584–85.

On appeal, this Court determined that Connor's criminal history category had been incorrectly calculated by the district court, because prior sentences in two related cases were separately counted. We held that only one of those two prior sentences should have been counted, so that Connor's criminal history category should have been IV, rather than V. As the district court had based its upward departure from the standpoint of a criminal history category of V, we held that remand was required to determine the proper extent of any departure from the standpoint of a criminal history category of IV. *United States v. Connor,* 950 F.2d 1267, 1271 (7th Cir.1991).

We also held that four of the five bases for the lower court's upward departure were not proper. Judge Mills had identified five reasons which impelled him to upward departure:

> *First,* were it not for the fact that several of the defendant's prior felony convictions were excluded because of age or because they were related cases, the defendant would be sentenced as a career offender under § 4B1.1. *Second,* because the sentences the defendant received on those convictions were not used in computing his

criminal history category, the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that he will commit other crimes. *Third,* the similarity between this conviction for interstate transportation of stolen property and the 1975 conviction for sale or receipt of stolen goods shows that the defendant has demonstrated the need for greater deterrence. *Fourth,* without an upward departure the defendant would receive absolutely no punishment for his attempt to escape. *Finally,* the Court considers the involvement of the .38 caliber handgun in the attempted escape to be a critical aggravating factor warranting departure.

*Connor,* 743 F.Supp. at 585, quoted by us in the first appeal in *Connor,* 950 F.2d at 1272. We concluded that Connor's related cases, which were not counted in his criminal history, were not an appropriate ground for departure, as their classification as "related" was not "the result of an overly broad definition of 'related cases' and because his [Connor's] related offenses [we]re not of a kind or degree not contemplated by the Sentencing Commission[.]" *Connor,* 950 F.2d at 1273. We held, however, that "[o]n remand, the district judge will be free to consider the similarity between the offenses [the instant offense and Connor's uncounted 1971 sentence], the fact that Connor was in jail for over half of the past 15 years, the seriousness of Connor's criminal history, and any other exceptional factors in order to decide whether a departure is justified." *Id.* at 1275. We further determined that the similarity—between the instant conviction for interstate transportation of stolen property and Connor's 1975 conviction involving property which had crossed a state line after being stolen—was not an appropriate justification for departure, as his 1975 offense was adequately reflected by the four level enhancement for being "in the business of receiving and selling stolen property." U.S.S.G. § 2B1.2(b)(3)(A) (1990). *Id.*

As to Judge Mills' fourth basis for departure, we decided that no upward departure

---

1. *See United States v. Connor,* 950 F.2d 1267, 1269–70 (7th Cir.1991) for an explanation of how Connor's guideline range was calculated.

relating to Connor's escape attempt was warranted. The district court had justified its upward departure on the ground that "neither Connor's offense level nor his criminal history level reflected an increase based on his attempted escape. The district judge explained that the offense level was too low because the guideline provisions for calculating the offense level in multiple count cases prevented the attempted escape count from affecting the offense level, *see* U.S.S.G. §§ 3D1.1, 3D1.4," *id.*, and that the escape attempt "was not properly reflected in the criminal history category.... [as] only an arbitrary distinction in § 4A1.1(d)–(e) of the guidelines between detention before and after conviction prevented the attempted escape from increasing the criminal history category." *Id.* at 1276. We concluded that "the Sentencing Commission had determined how to calculate the offense level when multiple counts were involved, [that] an escape was not sufficiently unusual to warrant disregarding the guidelines," *id.* at 1275, and that the distinction drawn by the Sentencing Commission between escapes attempted before and after conviction was not arbitrary and was "not a distinction which we can disregard." *Id.* at 1276. However, though we were of the view that the district court could not properly consider Connor's attempted escape in deciding whether to depart from the guideline range, we concluded that, because of the escape attempt, "the district judge could have enhanced Connor's offense level by two levels for obstruction of justice. U.S.S.G. § 3C1.1." *Id.*

Finally, we rejected the district court's last basis for an upward departure, namely, that a gun was involved in Connor's escape attempt, because "the connection between Connor and the gun [wa]s too distant to warrant such a departure in this case." *Id.* at 1277. Thus, we gave the following instructions to the district court for application by it upon remand of the case:

> We have held that on remand the district judge will be free to consider whether the background similarity between the conduct underlying the uncounted 1971 sentence and the instant one, taken with other circumstances, justifies an upward departure. We have also held that on remand the

> enhancement for obstruction of justice by reason of attempted escape, and adjustments required by that change, may be applied.

> . . . .

> We leave the decision of whether to depart and the appropriate degree of departure, if any, to determination on remand. We emphasize that the court will be completely free to use its discretion in making that decision, except to the extent that we have determined that particular justifications relied on by Judge Mills are erroneous. On remand, the court should also consider that Connor cooperated or offered to cooperate with the FBI on several matters.... on remand, the judge should at least consider whether Connor's cooperation should affect the extent of departure.

*Id.* at 1277–78. We also required that the case be assigned to a different district judge for resentencing. *Id.* at 1278.

Upon remand, the United States Probation Office submitted to the district court modifications to the Presentence Report consistent with our instructions, identifying Connor's offense level as 26 (28 minus 2 for acceptance of responsibility) and his criminal history category as IV, resulting in a guideline imprisonment range of 92–115 months. The district court (McDade, J.) determined that there were "aggravating circumstances of a kind, and to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines" and that a departure upward from the guideline range of 92–115 months was appropriate. The district court "sought to guide the degree of departure by looking at the guideline range specified for a defendant with an offense level of 28 and a criminal history category of VI.... Since a defendant with a criminal history category of VI and an offense level of 28 would have a guideline range of 140–175 months, the Court sentenced the defendant to 155 months imprisonment." *United States v. Connor*, 796 F.Supp. 366, 369 (C.D.Ill.1992). In so sentencing Connor, the district court noted that it was not relying upon "any one factor but the gestalt resulting from the confluence of defendant's aggravated offense conduct (the

purity of the cocaine), his serious criminal history as reflected, his penchant to engage in criminal activity when he is not incarcerated, and the similarity between the underlying conduct in the instant offense and the predicate conduct underlying an earlier conviction in 1971." *Id.*

In the within appeal, Connor asserts that the purity of the cocaine was not a proper ground for upward departure and also that the district court relied on grounds which this Court held improper in the first appeal, namely, Connor's previous convictions which were not counted because of age and relatedness. Connor further argues that the district court's enhancement of Connor's offense level for obstruction of justice was an abuse of discretion, as the district court at the original sentencing proceeding had declined to enhance Connor's sentence for that reason. We review *de novo* "whether the district court [on remand] relied on appropriate grounds for departure." *Connor,* 950 F.2d at 1271. In so doing, we note that the facts of this case were set forth by this Court in its opinion upon the first appeal, *Connor,* 950 F.2d at 1268–69, and also by the district court in its opinion rendered in connection with the initial sentencing of Connor. *Connor,* 743 F.Supp. at 583–84. We will therefore not repeat the facts herein.

## I

■ In this second appeal, Connor asserts that an upward departure based upon purity of the cocaine is not warranted and fails to fit within the parameters of U.S.S.G. § 2D1.1, Comment (n. 9), which states:

Trafficking in controlled substances, compounds, or mixtures of unusually high purity may warrant an upward departure.... The purity of the controlled substance, particularly in the case of heroin, may be relevant in the sentencing process because it is probative of the defendant's role or position in the chain of distribution. Since controlled substances are often diluted and combined with other substances as they pass down the chain of distribution, the fact that a defendant is in possession of unusually pure narcotics may indicate a prominent role in the criminal enterprise and proximity to the source of the drugs. As large quantities are normally associated with high purities, this factor is particularly relevant where smaller quantities are involved.

Connor first notes that this case involves cocaine, rather than heroin, and large, rather than small, quantities of drugs. Further, he points out that purity is a function of price and that since the government provided the money for the buy, his sentence should not be enhanced based upon a purity bought with government money. But the answer to Connor's said arguments is that while the note explains that the purity of the controlled substance, particularly in the case of heroin, may be relevant in sentencing, the note, by its own terms, is still applicable to other drugs, including cocaine. Similarly, although the note states that purity is especially relevant in the case of smaller quantities of controlled substances, it does not thereby render purity irrelevant where larger quantities are being trafficked. Rather, the correct reading of the note is that purity is relevant no matter what the quantity of controlled substances involved, but is particularly relevant where the quantities involved are small.

Further, Connor's argument that his sentence should not be enhanced based upon a purity bought with government money is not persuasive. The bottom line is that Connor had the contacts, ability, and willingness to procure high purity cocaine when in possession of sufficient "buy" money. The fact that Connor was able to acquire highly pure cocaine indicates "a prominent role in the criminal enterprise and proximity to the source of the drugs." In sum, in our view, the district court acted well within the guidelines in enhancing Connor's sentence because of the purity of the cocaine.[2]

---

**2.** Because we hold that the district court did not err in enhancing Connor's sentence based upon the purity of the cocaine, we need not reach Connor's assertion that the district court misapplied the guidelines in departing upward from an offense level of 26 to an offense level of 28.

Connor asserts that if the purity of the cocaine is an improper ground for departure, the district court erred in its statement that "[e]ven if this factor [the purity of the cocaine] was inappropriate to consider in justifying departure, the Court would still impose the same sentence for the

## II

■ The district court, in departing upward upon remand during the second sentencing proceeding, improperly relied, contends Connor, upon his previous convictions which could not be and were not counted because of age and relatedness. We disagree. On remand, the district court carefully followed our instructions and relied upon the following factors in departing upward: 1) the similarity of the 1971 offense and the instant offenses in the underlying criminal objective to sell stolen antiques and art, "considered in conjunction with the fact that the defendant spent over half of the past 15 years in prison," revealing Connor's recidivist tendencies; 2) the seriousness of Connor's criminal history, although it does not qualify him for career offender status; and 3) the conclusion that Connor's "past criminal conduct is significantly more serious than that of most defendants in criminal history category IV." *Connor*, 796 F.Supp. at 370. The district court also took into account Connor's pattern of counted and uncounted convictions. *Id.* at 370. In so doing, the district court acted well within our instructions, namely that—

> On remand, the district judge will be free to consider the similarity between the offenses, the fact that Connor was in jail for over half of the past 15 years, the seriousness of Connor's criminal history, and any other exceptional factors in order to decide whether a departure is justified.

*Connor*, 950 F.2d at 1275.

In resentencing Connor, the district court took the position that there was no inconsistency between our holding upon Connor's first appeal that his past criminal conduct not counted because of age or relatedness could not *per se* justify an upward departure, and "a finding that the total picture of counted and uncounted convictions indicate or present more extensive criminal conduct than otherwise reflected by defendant's criminal history or by the typical defendant with a

criminal history category IV." *Connor*, 796 F.Supp. at 370 n. 6 (citing *United States v. Williams*, 910 F.2d 1574, 1579 (7th Cir.1990); vacated on other grounds, ―― U.S. ――, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992)). We agree. Indeed, in our opinion upon Connor's first appeal, we referred to cases allowing upward departures to account for old convictions in situations not adequately considered by the Commission, and on that basis we instructed that on remand the district court could consider the seriousness of Connor's criminal history. *Connor*, 950 F.2d at 1274–1275 (citing *United States v. Dzielinski*, 914 F.2d 98, 101 (7th Cir.1990); *United States v. Williams*, 910 F.2d 1574, 1579 (7th Cir.1990); *United States v. Fonner*, 920 F.2d 1330 (7th Cir.1990)). Accordingly, the district court, upon remand following Connor's first appeal, was free to conclude that "the total picture of counted and uncounted convictions indicate or present more extensive criminal conduct than otherwise reflected by defendant's criminal history or by the typical defendant with a criminal history category IV." *Connor*, 796 F.Supp. at 370 n. 6.

## III

■ Connor also contends in this appeal that the district court abused its discretion in enhancing his offense level for obstruction of justice, because the district court at the original sentencing proceeding had declined to increase Connor's sentence for that reason. Connor argues that when we instructed that on remand the district court could enhance Connor's sentence for obstruction of justice by reason of attempted escape, we did not realize that Judge Mills had considered the issue and had declined to base an enhancement upon that factor, and that, had we so realized, we would not have authorized an obstruction enhancement. In that context, Connor characterizes the following statements made by Judge Mills during the original sentencing hearing as showing that Judge Mills fully considered the issue and declined to enhance Connor's sentence for obstruction of justice:

reasons which follow." *Connor*, 796 F.Supp. at 369. Connor argues that, if purity is not an appropriate basis for an increase in offense level, the sentence is erroneous because the other reasons given for upward departure by the district court were factors that related to defendant's

criminal history category, rather than to his offense level. While there may be some merit to that argument, since we hold that purity is a proper basis for departure, we need not, and do not, reach that issue.

Furthermore, I think that you could have gotten a two point increase for obstruction of justice because of that escape attempt. And that same general part that is under 3C1.1 states that if you attempted to impede or obstruct the administration of justice during the investigation or prosecution of the offense, the offense level shall be increased by two levels. So attempting to escape pretrial detention certainly can be properly construed as attempting to obstruct justice during the prosecution of the offense.

. . . .

Maybe it [the presentence report finding that two points should not be added for obstruction of justice and two points should be deducted for acceptance of responsibility] should be reversed and we end up with an additional four. But I determined to take the presentence report as it is. . . .

Sent. Tr. at 50–51. Connor fails to complete that quote. Judge Mills continued:

And what I am saying here in this almost limbo without a great deal of direction yet in how to interpret the guidelines, what they really mean, or in which pigeon hole which activity must be placed, is that because they haven't been placed or considered in the presentence report to determine the 92/115 on the guidelines, I am not going to disturb that.

Sent. Tr. at 52. Thus, at the time of Connor's first sentencing, the district court noted that it was acting with little guidance as to the issue. We specifically referred to that problem when we decided that the district court, on remand, could consider enhancing Connor's sentence for obstruction of justice by reason of attempted escape. In so doing, we wrote:

At the time Connor was sentenced, escape was not specifically included in the commentary to the guidelines as conduct for which an obstruction of justice enhancement was appropriate, but many courts have recognized that the enhancement applies to pretrial escape. The Sentencing Commission made clear that the obstruc-

tion of justice enhancement applies to escape in an amendment to the commentary effective November 1, 1990. U.S.S.G. § 3C1.1, comment. (n. 3(e)). Even though the government did not appeal the failure to enhance the sentence for obstruction of justice, we believe that the district court may include the enhancement on remand.

*Connor*, 950 F.2d at 1276 (citations omitted). Accordingly, when on remand the district court increased Connor's sentence for obstruction of justice by reason of attempted escape, it acted within the spirit and the letter of the authority conferred by our instructions.

### IV

In reviewing whether the degree of departure ordered by the district court is appropriate, we use a deferential standard of review. *Connor*, 950 F.2d at 1271 (citing *United States v. Terry*, 930 F.2d 542, 544 (7th Cir.1991). Here, we not only apply that approach, but we also note the district court's careful adherence to the views which we expressed in our opinion following Connor's first appeal.[3] Accordingly, we AFFIRM the sentence imposed on remand upon Connor by the district court.

---

**3.** We also note that the district court did, on remand, consider whether Connor's cooperation with the government should affect the extent of departure, as we had instructed.